C. Benjamin Nutley (177431)
nutley@zenlaw.com
1055 E. Colorado Blvd., 5th Floor
Pasadena, California 91106
Telephone: (626) 204-4060
Facsimile: (626) 204-4061

John W. Davis (200113)
john@johnwdavis.com
LAW OFFICE OF JOHN W. DAVIS
501 W. Broadway, Suite 800
San Diego, California 92101
Telephone: (619) 400-4870
Facsimile: (619) 342-7170

Attorneys for The Isaacson-Weaver Family Trust

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE ZYNGA INC. SECURITIES LITIGATION | Lead Case No. 12-cv-04007-JSC<br><br>Consolidated with Case Nos.<br>12-cv-4048-JSC; 12-cv-4059-JSC;<br>12-cv-4064-JSC; 12-cv-4066-JSC;<br>12-cv-4133-JSC; 12-cv-4250-JSC<br><br>**<u>CLASS ACTION</u>**<br><br>**PRELIMINARY OBJECTION TO STIPULATION OF SETTLEMENT AND NOTICE OF INTENT TO APPEAR**<br><br>Date: January 28, 2016<br>Time: 9:00 a.m.<br>Courtroom: F, 15th Floor<br>Judge: Hon. Magistrate Judge Jacqueline Scott Corley |

1 **PLEASE TAKE NOTICE** that The Isaacson-Weaver Family Trust ("Objector"), by and
2 through its undersigned counsel, intends to appear and be heard at the fairness hearing on January
3 28, 2016 at 9:00 a.m. in Courtroom F of the United States District Court for the Northern District
4 of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, to discuss the
5 following objections.

## I. INTRODUCTION

7   Pursuant to this Court's Order Granting Preliminary Approval dated October 27, 2015
8 (Doc. 214), the Isaacson-Weaver Family Trust (Family Trust) hereby objects to the proposed
9 settlement and request for attorneys' fees. The Family Trust, located at 6580 Avenida Mirola, La
10 Jolla, California 92037, is a retail investor with roughly seven million dollars under management,
11 most of it invested in equity securities. The Family Trust acquired 200 shares of common stock in
12 Zynga's Initial Public Offering on December 15, 2011, at $10.00 a share. *See* Exhibit 2 to the
13 Declaration of C. Benjamin Nutley filed herewith. By July 30, 2012, when this action was
14 commenced, Zynga's common stock had fallen to $3.01 per share. As of Tuesday January 12,
15 2016, those shares, which the Family Trust still holds, closed at $2.39 per share.

16   The Family Trust respectfully asks the Court to withhold approval of the proposed
17 settlement and Plan of Allocation, which are inadequate, unreasonable, and unfair. The Family
18 Trust further asks the Court to deny class counsel's request for an award of attorneys' fees as both
19 premature and excessive.

20   First, notice was not timely disseminated to the Family Trust, and left only two business
21 days for a response. That raises due-process issues that must be resolved before any consideration
22 of the merits. The notice that was disseminated is misleading, in that the required Statement of
23 Plaintiff Recovery fails to disclose that claimants with recoveries of under $10 will receive no
24 recovery at all. That unfair feature of the settlement is compounded by the fact that the settlement
25 unaccountably provides for early purchasers a return that is only a fraction of that being
26 apportioned to later purchasers, such as the representative plaintiff.

27   By the date when this action was filed shares of Zynga stock that sold for $10.00 per share
28 had fallen to $3.01 per share, giving the Family Loss a recoverable loss under the Securities Act of

1933 of $6.99 per share, or $1,398 on its $2,000 investment. See 15 U.S.C. §77k(e)(1). The proposed settlement of this matter will release and forever bar the Family Trust's claims while paying it *absolutely nothing* to compensate for its loss. *See* discussion *infra*, at 4. Meanwhile, the class counsel, who purport to represent the Family Trust's interests, seek to be paid millions of dollars – including a multiplier of 1.7 on their regular hourly rate. The fee requested by class counsel is unsupported by law.

## II. NOTICE WAS NOT TIMELY DISSEMINATED TO THE FAMILY TRUST

First, the Family Trust notes that the Notice was sent too late to afford it and other class members sufficient time to digest its terms and respond. Although the class-action notice was approved months ago, the copy of the Notice received by the Family Trust was not postmarked until January 6, 2016, and was not received until Friday January 9, 2016. *See* Exhibit 1 to the Declaration of C. Benjamin Nutley filed herewith. The deadline for making claims, opting out, or filing objections is Tuesday January 12, 2016 – just two business days later. That is clearly insufficient time to evaluate and respond to the Notice.

Due process requires that "notice must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Phillips Petroleum Co. v. Shutts* 472 U.S. 797, 812 (1985). "Process which is a mere gesture is not due process." *Mullane v. Central Hannover Trust Co.,* 339 U.S. 306, 315 (1950). Class members must have sufficient time and information to "choose for themselves whether to appear or default, acquiesce or contest." *Id. at* 339 U.S. at 314. That has not happened here, calling into question this Court's very assertion of jurisdiction over the absent class.

Consequently, the objections the Family Trust makes herein are those that its counsel could reasonably ascertain and articulate within the short time available. The Family Trust asserts that it should be afforded leave to supplement this objection after it has had an adequate opportunity to compare the factual and legal assertions of the parties against the full factual record and, if necessary, to take discovery.

Objection to Stipulation of Settlement                                               Lead Case No. 12-cv-04007-JSC

Page 2

## III. THE NOTICE OF THE SETTLEMENT IS INADEQUATE AND MISLEADING

The Notice is required by law to include a "*Statement of Plaintiff Recovery*" providing "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis," with its cover page "summarizing the information." 15 U.S.C. §§77z-1(a)(7), 78u-4(a)(7). Yet the figures on the Notice's cover page are misleading, and do not accurately state the prospective recovery. The summary of the Plan of Allocation, later in the Notice, states that "[n]o distributions to Authorized Claimants who would receive less than $10.00 will be made." Notice at 12. In other words, the Family Trust and other similarly situated investors will receive NOTHING to compensate for their losses. Nonetheless, the Family Trust and other class members are purportedly bound by the release: "Such Authorized Claimant will be bound by the terms of the Settlement." Notice at 12. The Statement of Plaintiff Recovery patently fails to disclose that claimants ostensibly entitled to a recovery are, in actuality, not entitled to a recovery at all under the Plan of Allocation.

Although the Notice says that fees will be capped at "no more than 25% of the Settlement Fund," Notice at 1, it is inadequate because it fails to indicate the basis of the fees sought or how they were calculated. The Notice is required by law to set forth "the amount of fees and costs that will be sought (including the amount of such fees and costs determined on a per share basis), and a brief explanation supporting the fees and costs sought. Such information shall be clearly summarized on the cover page of any notice to a party of any proposed or final settlement agreement." 15 U.S.C. §§77z-1(a)(7)(C), 78u-4(7)(C).

Here, the Notice indicates there is 25% cap on the fees to be requested. Notice at 1, 9; *cf.* 15 U.S.C. §§77z-1(a)(6), 78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."). But there is no explanation supporting the fees and costs sought – not even an indication of the attorneys' lodestar, which the Supreme Court employs to define a reasonable attorneys' fee, *see infra*, let alone of the fact that counsel seek a substantial enhancement of the lodestar. The notice is clearly deficient.

# IV. THE SETTLEMENT AND ITS PLAN OF ALLOCATION ARE INADEQUATE AND UNFAIR

Although the Family Trust suffered a $1,398 loss on its purchase of Zynga shares, the proposed settlement would deny it any recovery, releasing its claims for no compensation at all. Doubtless, many other retail investors are similarly situated – having lost thousands of dollars they will receive nothing at all in return for having their claims released and forever barred.

A settlement in which class members receive nothing – and yet are subject to a complete release – is the hallmark of an unfair settlement in which their interests are not being adequately represented.

The Notice states at page 1 that under the proposed settlement, "[t]he average distribution is estimated to be: $0.01551 per damaged share purchased between December 15, 2011 and the close of trading on February 14, 2012; and $0.15506 per damaged share purchased between after the close of trading on February 14, 2012 and the close of trading on July 25, 2012, before deduction of Court-approved fees and expenses described below."  Notice at 1.

For the 200 shares that the Family Trust purchased in Zynga's IPO, this comes to a total recovery of just $3.10 – which is roughly two-tenths of one percent of its $1,398 loss.  Class members who purchased in the later period will receive roughly ten times as much – an estimated "$0.15506 per damaged share purchased."

Before granting preliminary approval, this Court queried Plaintiffs about the Settlement's disparate treatment of earlier purchasers and later purchasers. (Doc. 208).  Plaintiffs' explanation concedes that "Lead Plaintiff allocated only a fraction of the recovery to claims for shares purchased during the Earlier Period" (Doc. 210 at 3), but asserts that is because those earlier claims are "substantially weaker." *Id*.

Plaintiffs' explanation ignores the fact that as a purchaser in Zynga's IPO, the Family Trust need not establish defendants' scienter, or even their own reliance, in order to prove a claim under Securities Act of 1933 sections 11 and 12. *See Herman & MacLean v. Huddleston,* 459 US 375, 381-82 (1983). "If a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his prima facie case. Liability

against the issuer of a security is virtually absolute." *Id.* Neither are 1933 Act claimants required to show loss causation – for loss is presumed, with section 11 providing that investors such as the Family Trust entitled to recover the difference between the offering price of $10.00 per share and the closing price of $3.09 per share on the date that this action was filed. *See* 15 U.S.C. §77k(e) ("The suit authorized under subsection (a) may be to recover such damages as shall represent the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought . . .").

The proposed settlement and Plan of Allocation fail to take account of the fact that 1933 Act plaintiffs such as the Family Trust are not required to establish their own reliance, the defendants' scienter, or loss causation – all elements of proof for class members who are open-market purchasers seeking to recover under Securities Exchange Act section 10(b). *See Dura Pharmaceuticals, Inc. v. Broudo,* 544 US 336, 341-42 (2005) (listing §10(b)'s elements).

Plaintiffs further suggest to the Court that absent class members in the disfavored "Earlier Period" could simply opt-out if they didn't agree with the proposal. (Doc. 210 at 3-4, n.3). Courts have long recognized that argument as specious. *Ace Heating & Plumbing Company v. Crane Company*, 453 F.2d 30, 33 (3d Cir. 1971) ("[Fed.] Rule [Civ. Proc.] 23 recognizes the fact that many small claimants frequently have no litigable claims unless aggregated. So, without court approval and a subsequent right to ask for review, such claimants would be faced with equally unpalatable alternatives – accept either nothing at all or a possibly unfair settlement.") Here, of course, it is worse: many claimants get nothing even if they stay in the settlement.

Although the Family Trust and other small retail investors receive nothing under the Plan of Allocation, and although the Plan of Allocation limits recovery for early purchasers to less than two-cents per share, the Plan of Allocation accords more than fifteen cents a share to later purchasers of large amounts – such as Lead Plaintiff David Fee who "purchased a total of 1,955,167 shares of Zynga common stock during the Class Period, as evidenced by his certification, a copy of which was filed herein on October 1, 2012. (ECF No. 44-2.)." (Doc. 125 at ¶34). The Plan of Allocation thus violates the securities laws' command that "[t]he share of any final judgment or of any settlement that is awarded to a representative party serving on behalf of a

1  class shall be equal, on a per share basis, to the portion of the final judgment or settlement

2  awarded to all other members of the class." 15 U.S.C. §§77z-1(a)(4), 78u-4(a)(4).

3  Finally, even putting aside the disparity in treatment and the failure to consider section 11

4  and 12 claims, the total settlement fund as a percentage of the losses suffered by the class is

5  trifling, suggesting a settlement for nuisance value not founded upon the actual scale of the

6  damages from the alleged misconduct. That not only counsels against final approval but, as

7  explained below, there is no foothold here for the fee award sought by Plaintiffs' counsel.

**V. THE ATTORNEYS' FEE REQUEST IS BOTH PREMATURE AND EXCESSIVE**

9  While retail investors such as the Family Trust will receive nothing at all under the

10 proposed settlement, and are subject to an inexplicably meager allocation as early purchasers,

11 class counsel – who purport to represent their interests – ask to be paid millions of dollars in

12 attorneys' fees. That alone suggests a settlement that should not be approved.   In any case,

13 because the settlement cannot be approved, the request is premature. There will be no basis for a

14 fee award fees until a fair settlement is proposed or the case is won at trial.

15 The request is also be premature for a more subtle reason: this action is subject to the

16 federal securities laws' overarching fee-shifting regime and requirement that the Court make

17 detailed findings concerning Federal Rule of Civil Procedure 11 upon final adjudication of the

18 case. *See* 15 U.S.C. §§77k(e), 77z-1(c), 78i(f), 78r(a), 78u-4(a)(8), 78u-4(c). The fee request here

19 thus ignores the Court's obligation to determine, in the first instance, whether fee shifting applies

20 such that the defendant, rather than the class, should pay a portion of the fees.

21 The 1933 Act section 27(c) and 1934 Act section 21D(c) require the district court "upon

22 final adjudication of the action . . . [to] include in the record specific findings regarding

23 compliance by each party and each attorney representing any party with each requirement of Rule

24 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or

25 dispositive motion." 15 U.S.C. §§77z-1(c)(1), 78u-4(c)(1). If any violation of Rule 11 is found,

26 the statute directs the district court to shift fees.   15 U.S.C. §§77z-1(c)(2)-(3), 78u-4(c)(2)-(3).

27 Though seldom honored, these provisions requiring Rule 11 review and potential fee

28 shifting are supposed to be mandatory. *See* M. Todd Henderson & William H. J. Hubbard,

*Judicial Noncompliance with Mandatory Procedural Rules Under the Private Securities Litigation Reform Act*, 44.S1 J. LEGAL STUDIES S87, S87-88 (2015) ("Section 21D(c)(1) of the Securities Exchange Act subjects courts to an unusually clear mandate: courts must make findings on whether attorneys complied with Rule 11 of the Federal Rules of Civil Procedure (which sanctions frivolous or unsupported claims) in every case arising under the act."); Matthew Tokson, *Judicial Resistance and Legal Change,* 82 U. CHI. L. REV. 901, 936-40 (2015) (discussing studies demonstrating that actual compliance with section 21D(c) "is quite rare").

The upshot is that the defendants might be separately liable for at least some of Plaintiffs' fees and costs, and this Court should not award fees from a class fund before determining whether fee liability may be shifted to one or more defendants. Even a cursory review of the Defendants' Answer raises troubling issues. For example, its Eighth Affirmative Defense states: "Plaintiff's claims are barred in whole or in part by the doctrines of res judicata, collateral estoppel, claim preclusion, and/or issue preclusion." Answer at 52 (Ninth Affirmative Defense). Yet no basis for such a defense is suggested in the record.

Another implication is that there is no support for an enhancement on the lodestar, as class counsel request. Were Rule 11 violations found and fees shifted under the forgoing mandatory provisions, or indeed under any of the securities laws' several discretionary fee-shifting provisions, the reasonable fees to be awarded would be limited by the rule of *Perdue v. Kenny A. Ex Rel. Winn, __ U.S. __,* 130 S. Ct. 1662 (2010), and *City of Burlington v. Dague,* 505 U.S. 557 (1992), that reasonable attorneys' fees generally must be limited to the reasonable lodestar amount – without any enhancements in all but the most extraordinary of cases.

The Supreme Court holds that under provisions affording the district court discretion to award fees, "a prevailing *plaintiff* ordinarily is to be awarded attorney's fees in all but special circumstances."[1] But if class counsel had prosecuted the case to a final judgment for plaintiffs, and obtained a fee award from defendants found to have violated the securities laws, the

---

[1] *Christiansburg Garment,* 434 U.S. at 417 (Court's emphasis); *see also Hensley v. Eckerhart*, 461 U.S. 424, 429 & n.2 (1983); *Albemarle Paper Co. v. Moody*, 422 US 405, 415 (1975); *Newman v. Piggie Park Enterprises, Inc.*, 390 US 400, 402-03 (1968).

reasonable fee award under *Perdue* and *Dague* would be limited to the attorneys' unenhanced lodestar. In fact, even if the defendants and their lawyers were found to have violated Rule 11, making fee shifting mandatory under sections 27 (c) and 21D(c), the reasonable fees to be awarded would be limited to unenhanced lodestar.

Class counsel should not be permitted to demand more than that by settling the matter under an agreement to seek a payment from the class that would exceed any payment they could obtain from the defendants. Here it appears that counsel have settled the case for nuisance value, and for no recovery at all to small retail investors such as the Family Trust. Rewarding such conduct presents tremendous dangers of collusive settlements designed to maximize attorneys' fees rather than the class's recovery.

This Court should accordingly reject counsel's attempt to charge fees that it admits reflect "a blended 1.7 multiplier of the lodestar." (Doc. 216, at 2). No multiplier should be permitted.

## VI. CONCLUSION

For the foregoing reasons, Objector respectfully requests that the Court withdraw its conditional approval of the proposed settlement. Objector hereby reserves the right to amend and refine its objections as more information is made available.

Respectfully submitted this 12th day of January, 2016.

> by: /s/ C. Benjamin Nutley
> C. Benjamin Nutley (177431)
> nutley@zenlaw.com
> 1055 E. Colorado Blvd., 5th Floor
> Pasadena, California 91106
> Telephone: (626) 204-4060
> Facsimile: (626) 204-4061
>
> Counsel for Objector