Joseph J. Tabacco, Jr. (SBN 75484)
Nicole Lavallee (SBN 165755)
Kristin J. Moody (SBN 206326)
**BERMAN DeVALERIO**
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6282
Email: jtabacco@bermandevalerio.com
nlavallee@bermandevalerio.com
kmoody@bermandevalerio.com

Jeffrey M. Norton (Admitted *Pro Hac Vice*)
**NEWMAN FERRARA LLP**
1250 Broadway, 27th Floor
New York, NY 10001
Telephone: (212) 619-5400
Facsimile: (212) 619-3090
Email: jnorton@nflp.com

*Lead Counsel and Attorneys for Lead Plaintiff David Fee*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE ZYNGA INC. SECURITIES LITIGATION | Lead Case No.12-cv-04007-JSC <br><br> Consolidated with Case Nos. <br> 12-cv-4048-JSC; 12-cv-4059-JSC; <br> 12-cv-4064-JSC; 12-cv-4066-JSC; <br> 12-cv-4133-JSC; 12-cv-4250-JSC <br><br> **CLASS ACTION** <br><br> **LEAD PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES, AND REIMBURSEMENT OF LITIGATION EXPENSES** <br><br> Date: February 11, 2016 <br> Time: 9:00 a.m. <br> Ctrm: F, 15th Floor <br> Judge: Hon. Magistrate Judge Jacqueline Scott Corley |

# TABLE OF CONTENTS

|   |   | | PAGE |
|---|---|---|---|
| I. | BACKGROUND | | 1 |
| II. | ARGUMENT | | 4 |
|   | A. | Notice Was Timely | 6 |
|   | B. | Notice Was Adequate | 6 |
|   | C. | The Plan of Allocation is Fair and Reasonable | 7 |
|   | D. | The Attorneys' Fees and Expense Request Is Fair and Reasonable | 9 |
| III. | CONCLUSION | | 12 |

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Bellinghausen v. Tractor Supply Co.*,
 306 F.R.D. 245 (N.D. Cal. 2015)..................................................................................9

*Chavez v. Netflix, Inc.*,
 162 Cal. App. 4th 43 (2008) ..........................................................................................6

*Ching v. Siemens Indus., Inc.*,
 No. 11-cv-04838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014)........................9

Chun-Hoon v. McKee Foods Corp.,
 716 F. Supp. 2d 848 (N.D. Cal. 2010) ..........................................................................5

*Churchill Village, LLC v. Gen. Elec.*,
 361 F.3d 566 (9th Cir. 2004) ........................................................................................4

*Dura Pharms., Inc. v. Broudo*,
 544 U.S. 336 (2005).......................................................................................................8

*Garner v. State Farm Mut. Auto. Ins. Co.*,
 No. CV 08 1365 CW, 2010 WL 1687829 (N.D. Cal. Apr. 22, 2010) ........................10

*Harris v. Marhoefer*,
 24 F.3d 16 (9th Cir. 1994)...........................................................................................11

*In re AIG, Inc. Sec. Litig.*,
 No. 04 Civ. 8141 DAB, 2010 WL 5060697 (S.D.N.Y. Dec. 2, 2010),
 *aff'd*, 452 Fed. Appx. 75 (2d Cir. 2012) ......................................................................5

*In re Am. Apparel S'holder Litig.*,
 No. 10-06352 MMM (JCGx), 2014 WL 10212865 (C.D. Cal. July 28, 2014) ............4

*In re Bluetooth Headset Prods. Liab. Litig.*,
 654 F.3d 935 (9th Cir. 2011) ........................................................................................9

*In re Charles Schwab Corp. Sec. Litig.*,
 No. C 08-01510 WHA, 2011 WL 1481424 (N.D. Cal. Apr. 19, 2011).........................9

*In re Immune Response Sec. Litig.*,
 497 F. Supp. 2d 1166 (S.D. Cal. 2007).........................................................................9

*In re Media Vision Tech. Sec. Litig.*,
 913 F. Supp. 1362 (N.D. Cal. 1996)............................................................................11

*In re Nuvelo, Inc. Sec. Litig.*,
 No. C 07-04056 CRB, 2011 WL 2650592 (N.D. Cal. July 6, 2011) ...........................9

*In re Omnivision Techs., Inc.*,
 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................4, 10

*In re Online DVD-Rental Antitrust Litig.*,
 779 F.3d 934 (9th Cir. 2015) .................................................................................................. 10

*In re Was. Pub. Power Supply Sys. Sec. Litig.*,
 19 F.3d 1291 (9th Cir. 1994) .................................................................................................. 10

*Keller v. Elec. Arts, Inc.*,
 No. 4:09-cv-1967 CW, 2015 WL 5005057 (N.D. Cal. Aug. 18, 2015),
 *appeal dismissed* (Nov. 9, 2015) ........................................................................................... 10

*Larsen v. Trader Joe's Co.*,
 No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014),
 *appeal dismissed* (Nov. 17, 2014) .......................................................................................... 9

*Mandujano v. Basic Vegetable Prods. Inc.*,
 541 F.2d 832 (9th Cir. 1976) .................................................................................................... 4

*Moore v. Verizon Commc'ns Inc.*,
 No. C 09-1823 SBA, 2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) ....................................... 4

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
 221 F.R.D. 523 (C.D. Cal. 2004) .............................................................................................. 5

*Nwabueze v. AT & T Inc.*,
 No. C 09-01529 SI, 2013 WL 6199596 (N.D. Cal. Nov. 27, 2013) ....................................... 10

*Parrish v. Manatt, Phelps & Phillips, LLP*,
 No. C 10-03200 WHA, 2013 WL 2405200 (N.D. Cal. May 31, 2013) ................................. 10

*Steiner v. Am. Broad. Co.*,
 248 F. App'x 780 (9th Cir. 2007) ........................................................................................... 10

*Vizcaino v. Microsoft Corp.*,
 290 F.3d 1043 (9th Cir. 2002) ................................................................................................ 10

*Wal-Mart Stores, Inc. v. Buholzer*,
 156 Fed. Appx. 346 (2d Cir. 2005) ........................................................................................... 6

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
 396 F.3d 96 (2d Cir. 2005) ....................................................................................................... 5

*White v. CellCo P'ship*,
 No. RG04-137699, 2008 WL 5262009 (Alameda Super. Ct. Oct. 21, 2008) .......................... 6

**Statutes and Rules**

15 U.S.C. § 78u-4(a)(7) ................................................................................................................. 6

15 U.S.C. §§78u-4(c)(2)-(3) ........................................................................................................ 11

15 U.S.C. §78u-4(a)(6) ................................................................................................................ 11

Fed. R. Civ. P. 11 ........................................................................................................................ 11

**Other Authorities**

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2014 Review and Analysis*, Cornerstone Research (2015) ................................. 9

**Docketed**

*Behr Wood Sealant Cases*,
 JCCP 4132 & 4138 (San Joaquin Super. Ct.) ............................................................................ 5

*Campbell v. Airtouch Cellular*,
 No. GIC751725 (San Diego Super. Ct.) .................................................................................... 5

*Davis v. Apple Computer, Inc.*,
 No. A105539, 2005 WL 1926621 (Cal. Ct. App. Aug. 12, 2005) ............................................. 6

*Greenberg v. ETrade Fin. Corp.*,
 No. BC360152 (L.A. Super. Ct. Sept. 16, 2009) ....................................................................... 5

*In re Enron Corp. Sec. Litig.*,
 No. H-01-3624 (S.D. Tex. Mar. 10, 2005) ................................................................................ 5

*In re Fla. Microsoft Antitrust Litig.*,
 Nos. 3D04-2501, 3D04-1590, 3D04-1986 (Dist. Ct. of Appeal Fla.) ....................................... 5

*In re Homestore.com, Inc., Sec. Litig.*,
 No. 01-cv-11115-RSWL (CWx) (C.D. Cal. Mar. 11, 2004) ..................................................... 5

*In re Visa Check/Master Money Antitrust Litig.*,
 No. 96-cv-05238-MKB-JO (E.D.N.Y. Aug. 18, 2003) ............................................................. 5

*Wilson, et al. v. Airbore Inc., et al.*,
 No. 5:07-cv-00770 (C.D. Cal. May. 19, 2008) ......................................................................... 5

Lead Plaintiff David Fee ("Lead Plaintiff") files this reply brief in further support of his request that the Court approve the proposed Settlement in this matter and in further support of Lead Counsel's request for an award of attorneys' fees and reimbursement of litigation expenses. To date, there are no pending objections to the proposed Settlement,[1] the Plan of Allocation or the request for attorneys' fees and reimbursement of litigation expenses.[2] Further, there have only been 32 requests for exclusion and none is from a major shareholder. Significantly, no public pension fund, or other institutional investor, has opted out of the Settlement or objected to any aspect of the Settlement, the Plan of Allocation, or the fee and expense application.

Overall, the Settlement Class's reaction is a clear testament to the fairness, adequacy and reasonableness of the proposed Settlement, as well as the reasonableness of the attorneys' fees and expense requests. Thus, for this reason and the reasons set forth herein, and in Lead Plaintiff's Notice of Motion and Motion for Final Approval of Proposed Class Action Settlement, ECF No. 215 (the "Final Approval Motion") and Lead Counsel's Notice of Motion and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses, ECF No. 216 ("Fee Motion"), the Settlement should be finally approved and Lead Counsel's request for an award of attorneys' fees and reimbursement of litigation expenses should be granted.

I. **BACKGROUND**

The Court preliminarily approved the proposed Settlement on October 27, 2015. Order Granting Preliminary Approval of Class Action Settlement, ECF No. 215 ("Preliminary Approval Order"). Thereafter, the Court-appointed claims administrator, Epiq Systems, Inc. ("Epiq"), fully complied with the Court-approved notice plan. *See* Supplemental Declaration of Stephanie A. Thurin Regarding Notice Dissemination ("Suppl. Thurin Decl.") at ¶3. This included that on November 3, 2015, Epiq caused the Summary Notice to be published in *Investor's Business Daily*.

---

[1] Although the Isaacson-Weaver Family initially objected to the Settlement, it has since excluded itself from the Settlement and, thus, as it concedes, it has no standing to object. ECF 225 at 2. Moreover, it has also expressly stated it no longer wishes to challenge the Plan of Allocation or the overall adequacy of the Settlement. *Id.* at 1-2. In any event, its original objections are baseless as discussed herein.

[2] All capitalized terms not otherwise defined herein have the same meaning as set forth in the Amended Stipulation of Settlement, dated October 15, 2015, ECF. No. 212-1 ("Stipulation").

Also on November 3, 2015, Epiq mailed the Notice of Pendency of Class Action and Proposed Settlement, Final Approval Hearing, and Motion for Attorneys' fees and Reimbursement of Litigation Expenses (the "Notice") and the Proof of Claim and Release ("Proof of Claim") (together, the Notice and Proof of Claim are referred to herein as the "Notice Packet") to known holders of Zynga common stock during the Settlement Class Period as well as to 1,625 common banks, brokers and other nominees (collectively "brokers"). A total of 235,580 Notice Packets have been mailed to potential Class members. *See id.* at ¶¶3-4. Further, the settlement website, www.zyngasecuritieslitigation.com, has been live and active since November 2, 2015 and contains the Notice and Proof of Claim form for download as well as copies of relevant Court documents. *Id*. at ¶¶3, 5.

In early January, nearing the end of the settlement notice program, Lead Counsel became aware of a problem caused by the failure of certain brokers to comply with the notice provisions approved in the Preliminary Approval Order.[3] Consequently, certain Settlement Class Members may not have received their Notice Packets with sufficient time to respond by the deadlines to file objections, exclusions or Proof of Claims. In response, Lead Counsel instructed Epiq to keep track of claims and requests for exclusion submitted beyond the deadline while the parties assessed the scope of the issue and determined the best course of action. Thereafter, the parties stipulated to the following solution: (1) extend deadline for Settlement Class Members who were impacted by this delay to submit a Proof of Claim, request exclusion or object; (2) extend the deadline for Lead Plaintiff's reply brief and response to objections and proof of notice compliance; (3) reschedule the Final Approval Hearing; and (4) have the settlement website updated promptly and prominently to inform all visitors of the new date for the Final Approval Hearing and of the new date for Settlement Class Members affected by the delay to submit a claim, request for exclusion or objection. January 14, 2016 Stipulation and Order Modifying the

---

[3] The Notice directed such brokers who purchased or otherwise acquired Zynga common stock for the beneficial interest of a person or organization other than themselves to either (i) send a copy of the Notice Packet to the beneficial owner of such common stock, postmarked no later than 10 days after such nominees' receipt of the Notice Packet, or (ii) provide to Epiq the names and addresses of such persons no later than 10 days after such nominees' receipt of the Notice Packet.

Schedule Concerning Settlement, ECF No. 224, at 1-3. This was then ordered by the Court. *Id*. at 6. Thereafter, Epiq updated the settlement website accordingly. Suppl. Thurin Decl. at ¶¶6-7. Epiq also informed its call center and email agents of the new dates. *Id.*

Under the revised schedule, those affected by the broker delay now have until March 11, 2016 to submit claims. The January 12, 2016 deadline remains in effect for all others who received timely notice. To date, Epiq has received 24,574 claims from potential Class Members. Suppl. Thurin Decl. at ¶10. Further, under the revised schedule, those affected by the broker delay were given until January 29, 2016 to submit requests for exclusion. Again, for those Settlement Class Members unaffected by the broker delay, the January 12, 2016 deadline remains in effect.[4] As of February 8, 2016, Epiq has received 32 requests for exclusion, none of which are by institutional investors. *Id.* at ¶8. Of these, 16 do not indicate the number of shares purchased during the Settlement Class Period, as required. *Id.* The 16 remaining exclusion requests, which included the number of shares of Zynga common stock claimed to have been purchased in the Settlement Class Period, represent a total of 34,852 shares. *Id*. A list of the names of all 32 requests for exclusion is attached as Exhibit A to the Supplemental Thurin Declaration.

The revised schedule also extended the deadline for objections to January 29, 2016 for those Settlement Class Members affected by the broker delay. For those unaffected by the delay, the January 12, 2016 deadline remained in effect. The Notice set out the procedure for Settlement Class Members to object to the proposed Settlement, the Plan of Allocation or the request for an award of attorneys' fees and reimbursement of litigation expenses. The deadlines for objections have now passed and there are no pending objections, timely or untimely. Suppl. Thurin Decl. at ¶9. The initial objection lodged by the Isaacson-Weaver Family has since been effectively

---

[4] However, one request for exclusion that was submitted after January 12, 2016 has been received for a Settlement Class Member who does not appear to have been affected by the broker delay. Suppl. Thurin Decl. at ¶8. We are recommending that this one request for exclusion be accepted given, among other things, that it has been received in sufficient time before the date of the Final Approval Hearing.

withdrawn without receipt of any consideration by Lead Plaintiff or Lead Counsel and, in any event, is without merit.

Given the favorable reaction of the Class, and the benefits to the Settlement Class as set out in the Final Approval Motion and Fees Motion, the Court should approve all aspects of the proposed Settlement.

## II. ARGUMENT

In the initial filings in support of the proposed Settlement, Lead Plaintiff argued that the Settlement should be approved because it was fair and reasonable and in the best interests of the Class. The reaction of the Class strongly supports Lead Plaintiff's position. Pursuant to the Court's instructions, the Notice that was sent to Class members provided a clear explanation of the consequences of not opting out and a clear explanation of how to object to the proposed Settlement, Plan of Allocation or the proposed award of attorneys' fees and reimbursement of expenses. Although 235,580 Notice Packets have been sent to potential Settlement Class Members, only 32 requests for exclusion have been made, and no Settlement Class Member has a pending objection to the proposed Settlement, Plan of Allocation or the proposed award of attorneys' fees and reimbursement of expenses.

As set forth in the Final Approval Motion, one of the factors a Court should consider in evaluating the fairness of a proposed settlement is the reaction of the class. *See* Final Approval Motion at 9; *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). "In order to gauge the reaction of the other class members, it is appropriate to evaluate the number of requests for exclusion, as well as the objections submitted." *In re Am. Apparel S'holder Litig.*, No. 10-06352 MMM (JCGx), 2014 WL 10212865, at *15 (C.D. Cal. July 28, 2014); *see also Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013) (citing *Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976)). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528-29

(C.D. Cal. 2004)); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 119 (2d Cir. 2005) ("[T]he favorable reaction of the overwhelming majority of class members to the Settlement is perhaps the most significant factor in our *Grinnell* inquiry."). Furthermore, a small number of exclusion requests representing a minuscule percentage of outstanding shares further supports the fairness of the terms of a settlement.[5] *See, e.g.*, *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (concluding, in a case where "[a] total of zero objections and sixteen opt-outs (comprising 4.86% of the class) were made from the class of roughly three hundred and twenty-nine (329) members," that the reaction of the class "strongly supports settlement"); *In re AIG, Inc. Sec. Litig.*, No. 04 Civ. 8141 DAB, 2010 WL 5060697, at *2 (S.D.N.Y. Dec. 2, 2010) (noting the "extremely positive" reaction to the settlement where there were "only 105 requests for exclusion received, out of which 61 were timely and valid"), *aff'd*, 452 Fed. Appx. 75 (2d Cir. 2012).

The Settlement Class's reaction – very few exclusions and no objections – is a clear testament to the fairness, adequacy and reasonableness of the proposed Settlement, as well as the reasonableness of the attorneys' fees and expense requests. Although one objection was filed by the Isaacson-Weaver Family, it has since excluded itself from the Settlement and notified the Court regarding same (the "Exclusion Notice").[6] Thus, as it concedes in its Exclusion Notice, it

---

[5] While some of the individuals who requested exclusion did not indicate the number of shares purchased during the Settlement Class Period, the ones who did have represented that they collectively purchased 34,852 shares during the Settlement Class Period, which represents a small fraction, .0176%, of the 197,686,000 public float as of July 25, 2012. Supplemental Declaration of Nicole Lavallee in Support of Lead Counsel's Motion for Attorneys' Fees and Reimbursement of Litigation Expenses ("Suppl. Lavallee Decl.") at ¶5.

[6] Notably, the Isaacson-Weaver Family is represented by attorneys C. Benjamin Nutley and John W. Davis, who routinely file objections to class action settlements on behalf of their clients and who, separately and together, have objected to dozens of class actions settlements. *See, e.g.*, *Wilson, et al. v. Airbore Inc., et al.*, No. 5:07-cv-00770 (C.D. Cal. May. 19, 2008); *Greenberg v. ETrade Fin. Corp.*, No. BC360152 (L.A. Super. Ct. Sept. 16, 2009); *In re Visa Check/Master Money Antitrust Litig.*, No. 96-cv-05238-MKB-JO (E.D.N.Y. Aug. 18, 2003); *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex. Mar. 10, 2005); *Behr Wood Sealant Cases*, JCCP 4132 & 4138 (San Joaquin Super. Ct.); *In re Homestore.com, Inc., Sec. Litig.*, No. 01-cv-11115-RSWL (CWx) (C.D. Cal. Mar. 11, 2004); *In re Fla. Microsoft Antitrust Litig.*, Nos. 3D04-2501, 3D04-1590, 3D04-1986 (Dist. Ct. of Appeal Fla.); *Campbell v. Airtouch Cellular*, No. GIC751725 (San Diego Super. Ct.); *Davis v. Apple Computer, Inc.*, No. A105539, 2005 WL 1926621 (Cal. Ct.

has no standing to object as it is not a Settlement Class Member. ECF No. 225 at 2. Most importantly, it and its counsel "took advantage of the additional time to review the proposed settlement in light of the entire record" and, "[a]fter additional deliberation, the Family Trust decided that it does not wish to challenge the amount allocated to early purchasers under the Plan of Allocation. Neither does it wish to challenge the settlement's overall adequacy." *Id.* at 1-2. In any event, as discussed below, the concerns that it had made without the benefit of sufficient time, are without merit.

### A. Notice Was Timely

Notice was timely disseminated. As discussed above and in the parties' January 14, 2016 stipulation, the delayed notice to certain Settlement Class Members was not the result of late notice to the Settlement Class as a whole occasioned by any lack of diligence on the part of Lead Plaintiff or Epiq but rather the result of broker delay. Lead Plaintiff and Epiq undertook continuous efforts to assure timely broker compliance, and, when the delay made it apparent that certain Settlement Class Members would face an unreasonably brief period to respond to Notice, swift and appropriate action was taken to rectify the situation and ensure deadlines were extended to those affected. Indeed, the Isaacson-Weaver Family took advantage of the extended deadlines by subsequently excluding itself from the class. ECF No. 225.

### B. Notice Was Adequate

Likewise, the Isaacson-Weaver Family's initial concerns regarding the adequacy of Notice were unfounded. As an initial matter, this Court has already ordered that the Notice is adequate. Preliminary Approval Order at 25. Further, any argument that the Notice did not adequately provide the amount of recovery proposed to be distributed is wrong. Prelim. Obj., ECF No. 220 ("Obj."), at 3. What is required is a statement of "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis." 15 U.S.C. § 78u-4(a)(7). Further, Notice must include a "cover page

---

App. Aug. 12, 2005); *Wal-Mart Stores, Inc. v. Buholzer*, 156 Fed. Appx. 346, 348 (2d Cir. 2005); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 63 (2008); *White v. CellCo P'ship*, No. RG04-137699, 2008 WL 5262009 (Alameda Super. Ct. Oct. 21, 2008).

*summarizing* the information contained in such statements" and other required statements. *Id*. (emphasis added). The Notice does just that. It states the amount of the settlement and the distribution on a per share basis. Ex. A to Decl. of S. Thurin (ECF No. 217-1) ("Notice") at 1. Moreover, twice, including once in bold, the Notice states that distributions to Authorized Claimants who would receive less than $10.00 will not be made because of the administrative expenses of processing and mailing such checks. *Id.* at 12. The Notice also includes a summary of the statement of recovery on the cover page, specifically stating the amount of the settlement and the estimated recovery per share before deduction of Court-approved fees and expenses. *Id.* at 1.

No doubt because of its lack of sufficient time to review the papers, the Isaacson-Weaver Family also noted that the Notice fails to adequately set forth the amount of fees and costs sought and a brief explanation supporting same. Obj. at 3. But the Notice expressly states that "Lead Counsel will ask the Court to approve payment of up to 25% of the Settlement Fund, or approximately $5,750,000, to them for attorneys' fees and a payment of up to $276,000 to them for reimbursement of expenses. These fees and expenses would pay Lead Counsel for investigating the facts, litigating the case and negotiating the Settlement." Notice at 9. Moreover, this is summarized on the cover page. *Id.* at 1. Furthermore, the Notice informs Settlement Class Members that the submission in support of the fee and expense request was to be filed with the Court by on December 11, 2015, and thereafter made available on the settlement website. *Id.* at 9. And, indeed, the highly-detailed submission in support of the fee and expense request, including an explanation of the lodestar and multiplier, was filed on Friday, December 11, 2015, and made available on the settlement website on Monday December 14, 2015. Suppl. Thurin Decl. at ¶5.

Thus, the Notice fully complies with the law, this Court's orders and did indeed address the concerns initially raised.

**C.    The Plan of Allocation is Fair and Reasonable**

Further, the Plan of Allocation is fair and reasonable and does not unfairly treat Settlement Class Members who purchased in the earlier part of the Settlement Class Period. Indeed, the

Notice clearly explains the reason for the difference in recovery for the two periods. Specifically, the Notice states that the Plan of Allocation provides for a smaller recovery for damaged shares purchased during the earlier period based on the determination, with the aid of a damages consultant, that the claims for shares purchased during the earlier period are substantially weaker because "(1) the 2012 guidance was first issued on February 14, 2012; (2) the allegations regarding Facebook are only at issue in the later period; (3) the allegations that defendants were aware of declining trends in bookings are stronger during the later period; and (4) the Court has dismissed the allegations regarding Zynga's pipeline as inactionable as a matter of law." Notice at 12. Moreover, this is further explained in Lead Plaintiff's Supplemental Submission in Support of Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement, ECF No. 210 ("Suppl. Sub."). Suppl. Sub. at 1-5. Indeed, in its Preliminary Approval Order, the Court found that, based on this explanation, the Plan of Allocation "distributes the funds without giving undue preferential treatment to any class members." Preliminary Approval Order at 19. Finally, the Notice informs Settlement Class Members that they may exclude themselves from the Settlement and not be bound by the release. Notice at 8.

The Isaacson-Weaver Family's withdrawn argument regarding the Settlement as a percentage of market losses is contrary to law. Obj. at 6. Under Section 10(b) of the Securities and Exchange Act of 1934, a plaintiff is not entitled to all economic loss suffered from class period purchases. Rather, it is only entitled to damages it proves were caused by the fraud. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). A decline in the value of a firm's stock may be the result of "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events," and not fraud. *Id.* at 343. A plaintiff must ferret out general market factors and estimate the economic loss that was caused by the fraud. The Plan of Allocation here provides for distribution of the Net Settlement Fund to Authorized Claimants *pro rata*, based on a formula tied to liability and damages in accordance with *Dura*.

In addition, as discussed in Lead Plaintiff's Motion for Preliminary Approval and Final Approval Motion, the proposed Settlement represents approximately 14% of potential

1 recoverable damages and, even after deducting requested attorneys' fees, costs, and
2 administration costs, 9.5% of total estimated damages – which is multiple times higher than the
3 average percentages for securities class actions. Final Approval Motion at 14; *see also In re*
4 *Immune Response Sec. Litig*., 497 F. Supp. 2d 1166, 1175 (S.D. Cal. 2007) (settlement of 12% of
5 maximum damages, assuming complete success was reasonable); *OmniVision,* 559 F. Supp. 2d
6 at 1042, 1046 (gross recovery of 9% of possible damages, which the court noted was three times
7 the usual recovery in class securities settlements, and which was 6% of the potential damages
8 after deducting attorneys' fees and costs, was reasonable); Laarni T. Bulan, Ellen M. Ryan &
9 Laura E. Simmons, *Securities Class Action Settlements: 2014 Review and Analysis*, Cornerstone
10 Research (2015), at 8, available at *https://www.cornerstone.com/GetAttachment/701f936e-ab1d-*
11 *425b-8304-8a3e063abae8/Securities-Class-Action-Settlements-2014-Review-and-Analysis.pdf*
12 (finding securities class action settlements in both 2013 and 2014 recovered a median of 2.2% of
13 plaintiffs' estimated damages).

### D. The Attorneys' Fees and Expense Request Is Fair and Reasonable

Finally, as discussed in the Fee Motion, Lead Counsel's fee request of $5,750,000, or 25% of the Settlement Fund is justified. *See generally* Fee Motion. Indeed, 25% is considered presumptively reasonable in the Ninth Circuit and courts in this circuit often award higher than 25%. *Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 265 (N.D. Cal. 2015) (Corley, Mag. J.) ("The [25%] percentage [fee] sought is at the presumptively reasonable benchmark amount in this Circuit.").[7] An analysis of the various facts courts may consider in evaluating a fee request

---

[7] *See also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002) (in common fund cases, the "benchmark" award is 25% of the recovery obtained, with 20-30% as the usual range); *Ching v. Siemens Indus., Inc*., No. 11-cv-04838-MEJ, 2014 WL 2926210, at *7 (N.D. Cal. June 27, 2014) ("[T]he Ninth Circuit considers [the 25% benchmark] presumptively reasonable."); *id.* at *8 (awarding 30% of common fund); *In re Charles Schwab Corp. Sec. Litig*., No. C 08-01510 WHA, 2011 WL 1481424, at *7-8 (N.D. Cal. Apr. 19, 2011); *Larsen v. Trader Joe's Co*., No. 11-cv-05188-WHO, 2014 WL 3404531, at *1 (N.D. Cal. July 11, 2014) (awarding 28% of the settlement fund, which was "in the acceptable range in the Ninth Circuit"), *appeal dismissed* (Nov. 17, 2014); *In re Nuvelo, Inc. Sec. Litig*., No. C 07-04056 CRB, 2011 WL 2650592, at *3 (N.D. Cal. July 6, 2011) (awarding 30%); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW, 2010 WL

all weigh in favor of approving the request, including, (1) the results achieved; (2) the risks of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and financial burden carried by the plaintiffs; (5) awards made in similar cases; (6) the reaction of the class to the proposed fee and expense request; and (7) the lodestar cross-check. *See id.* at 265 (citing *Nwabueze v. AT & T Inc.*, No. C 09-01529 SI, 2013 WL 6199596, at *10 (N.D. Cal. Nov. 27, 2013); *Parrish v. Manatt, Phelps & Phillips, LLP*, No. C 10-03200 WHA, 2013 WL 2405200, at *4 (N.D. Cal. May 31, 2013).[8] Moreover, a 1.7 multiplier of lodestar is fair and reasonable. *Vizcaino*, 290 F.3d at 1050 (the Ninth Circuit upheld the court's use of a lodestar cross-check and concluded that a percentage award that corresponded to a 3.65 multiplier was reasonable as within the range of multipliers applied in common fund cases).

Further, Lead Counsel requests reimbursement of $189,427.69 in litigation expenses. This is $4,746.40 more than the amount included in the Fee Motion, but the total request is still well below $276,000, the maximum amount for which Lead Counsel advised Settlement Class Members they would seek reimbursement in the Notice. As indicated in the Fee Motion papers, Lead Counsel planned to include additional expenses incurred after it filed its Fee Motion in its request for a fee and expense award, not to exceed $10,000.00. Declaration of Jeffrey M. Norton of Newman Ferrara LLP in Support of Lead Counsel's Motion for Attorneys' Fees and Reimbursement of Litigation Expenses, previously submitted, at 3, n.4. Notably, however, this additional amount does not include all expenses that have been incurred since the Fee Motion was filed, but represents only expenses for on-line legal research and travel for the Final Approval Hearing. Suppl. Lavallee Decl. at ¶4. The expenses for on-line legal research since December 11, 2015 is $2,568.40 and travel expenses for the Final Approval Hearing total $2,178.00. *Id*. The expense request here is reasonable as all of the expenses included in the request were necessary to achieving the Settlement here and are of the type courts routinely

---

1687829, at *2 (N.D. Cal. Apr. 22, 2010) (awarding 30%); *OmniVision*, 559 F. Supp. 2d at 1047 ("[I]n most common fund cases, the award exceeds th[e] benchmark.").

[8] *See also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015); *Vizcaino*, 290 F.3d at 1048-50; *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 782 (9th Cir. 2007); *In re Was. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994); *Keller v. Elec. Arts, Inc.*, No. 4:09-cv-1967 CW, 2015 WL 5005057, at *2-3 (N.D. Cal. Aug. 18, 2015), *appeal dismissed* (Nov. 9, 2015); *OmniVision*, 559 F. Supp. 2d at 1046.

1 reimburse. *See, e.g., Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (allowing recovery of "out-of-pocket expenses that would normally be charged to a fee-paying client"); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1367-72, 1367 (N.D. Cal. 1996) (reasonable costs related to retention of experts, investigator, photocopying, telephone, legal research fees, travel expenses, postage and filing fees may be reimbursed).

In its withdrawn argument against the reasonableness of the fee request, the Isaacson-Weaver Family ignored and misstated the law. Obj. at 6-8.

First, although the Private Securities Litigation Reform Act requires courts to make findings regarding compliance with Rule 11 upon final adjudication of an action, that provision does not concern how class counsel is to be compensated and certainly does not prohibit attorneys' fees to be paid out of a common fund or to include a multiplier. *See* 15 U.S.C. §§78u-4(c)(2)-(3). The statute merely states that the appropriate measure for calculating a Rule 11 sanction is to award the opposing party the reasonable attorneys' fees and other expenses incurred as a direct result of the violation. *Id*. Furthermore, the Court will consider and make a finding on Rule 11 compliance before it rules on the fee request. Indeed, the [Proposed] Final Judgment and Order of Dismissal with Prejudice agreed to by the parties and submitted to the Court includes proposed language that the "Court finds that, during the course of the Action, the Settling Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure." ECF No. 212-1 at 88. Thus, the Court will consider whether there has been a Rule 11 violation before it rules on the fee request. In any event, there is no legitimate argument that any of the parties failed to comply with Rule 11 here.

Second, the Isaacson-Weaver Family conflates common fund cases, as here, with fee-shifting cases. Thus, the fee-shifting cases it relies on have no applicability. Obj. at 6-8. Indeed, the PSLRA expressly contemplates that attorneys' fees be paid as a percentage of the fund. *See* 15 U.S.C. §78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.").

1 | **III. <u>CONCLUSION</u>**

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement and Plan of Allocation and approve Lead Counsel's request for an award of attorneys' fees of $5,750,000 (25% of the Settlement Fund) and reimbursement of $189,427.69 in out-of-pocket expenses.

DATED: February 8, 2016

Respectfully submitted,

**BERMAN DEVALERIO**

By: */s/ Nicole Lavallee*
    Nicole Lavallee

Joseph J. Tabacco, Jr.
Kristin J. Moody
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6282
Email: jtabacco@bermandevalerio.com
    nlavallee@bermandevalerio.com
    kmoody@bermandevalerio.com

Jeffrey M. Norton
**NEWMAN FERRARA LLP**
1250 Broadway, 27th Floor
New York, NY 10001
Telephone: (212) 619-5400
Facsimile: (212) 619-3090
Email: jnorton@nfllp.com

*Lead Counsel and Attorneys for Lead Plaintiff David Fee*